IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CARY D. HAUSER,

       Plaintiff,                      No. CIV S-05-0170 GGH

    vs.

JO ANNE B. BARNHART,
Commissioner of Social
Security,
                                        ORDER

       Defendant.
_____/

        Plaintiff challenges the onset date of her disability as found by a final decision of the Commissioner of Social Security ("Commissioner") in regard to plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Plaintiff contends that the Commissioner's decision awarding her DIB but rejecting her claim of an earlier onset date is not supported by substantial evidence. For the reasons that follow, plaintiff's Motion for Summary Judgment or Remand is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and the Clerk is directed to enter judgment for the Commissioner.

BACKGROUND

        Plaintiff, born October 30, 1952, applied for disability benefits on September 22, 1998. (Tr. at 62.) Plaintiff alleged she was unable to work since March 4, 1996, due to low back pain, arthritis, left elbow pain, high blood pressure, and depression. (Tr. at 59, 62.) After an

April 25, 2000 decision in which the ALJ found plaintiff was not disabled, the Commissioner voluntarily remanded for further proceedings. (Tr. at 18-19, 536-37.) In a second decision dated May 14, 2004, ALJ L. Kalei Fong determined that plaintiff was disabled since October 30, 2002 only.[1] (Tr. at 519-23.) The ALJ made the following findings:

>   1. The claimant has not engaged in substantial gainful activity since October 30, 2002. She last met the special earnings requirements of the Social Security Act on December 31, 2002.
>
>   2. The medical evidence establishes that the claimant has the following severe impairments: lumbar disc disease, hypertension, and asthma.
>
>   3. The claimant has no impairment that meets or equals the criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:
> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
    The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4. The claimant's assertions concerning her ability to work are credible.

5. The claimant has been limited to a sedentary level of exertion. She is unable to engage in significant standing, lifting, or walking. She should not climb, kneel, crouch, or crawl.

6. The claimant is unable to perform the requirements of her past relevant work.

7. On October 30, 2002, the claimant was closely approaching advanced age.

8. The claimant has a high school education.

9. The claimant has a skilled work background. The claimant does not have skills transferable to jobs within her residual functional capacity.

10. Since the evidence supports a finding that the claimant can perform the demands of no more than sedentary work, a finding of disabled is directed by medical-vocational rule 201.14 as of October 30, 2002. Prior to this date, the claimant was probably capable of performing light work based on the opinions of the State Agency doctor and Drs. Roe, Karamlou, and Thom. Thus, the claimant was not disabled before October 30, 2002, under Rule 202.21 of Table No. 2, Appendix 2, Subpart P, Regulations No. 4, considering her vocational factors before this date (a younger individual with a high school education and skilled past relevant work history without skills transferable to light work). Even if the claimant were given the benefit of the doubt and found limited to sedentary work before October 30, 2002, she would still be found not disabled under Rule 201.21 of Table No. 1, Appendix 2, Subpart P, Regulations No. 4, considering her vocational factors before this date.

11. The claimant has been under a disability, as defined in the Social Security Act, since October 30, 2002, but she was not disabled before then.

(Tr. at 522-23.)

ISSUES PRESENTED

Plaintiff has raised the following issues: (A) Whether the ALJ Should Have Found the Proper Onset Date to be March 4, 1997 Rather Than October 30, 2002; (B) Whether the ALJ

3

Erred in Failing to Obtain Testimony From a Medical Expert Where Plaintiff's Onset Date Was Inferred; and (C) Whether the ALJ Failed to Reconcile the Inconsistent Findings That Plaintiff's Allegations of Depression and Pain Were Substantiated With the Finding of a Later Onset Date.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

ANALYSIS

A. Whether the ALJ Should Have Found the Proper Onset Date to be March 4, 1997 Rather Than October 30, 2002

Plaintiff contends that substantial evidence does not support the ALJ's onset date of October 30, 2002, but that evidence shows her disability began on March 4, 1997.

The significant date for disability compensation is the date of onset of the disability rather than the date of diagnosis. Morgan v. Sullivan, 945 F.2d 1079, 1081 (9th Cir. 1991), citing Swanson v. Secretary of Health and Human Services, 763 F.2d 1061, 1065 (9th Cir. 1985). In determining the date of onset of disability, the Social Security Administration has indicated that the date alleged by the individual should be used if it is consistent with all the

evidence available.  Social Security Ruling (SSR) 83-20.  The question before this court is therefore "whether the onset date actually chosen is supported by substantial evidence, not whether another date could reasonably have been chosen.  The burden of proof rests upon the claimant."  Magallanes v. Bowen, 881 F.2d 747 (9th Cir. 1989) (citations omitted).

The ALJ found plaintiff's disability onset date to be the date of her 50th birthday, and based on the finding that she could only do sedentary work, she was disabled under Rule 201.14 of the grids.  Prior to October 30, 2002, the ALJ relied on medical evidence indicating that plaintiff could probably do light work, and that even if she were relegated to sedentary work during this time period, Rules 202.21 and 201.21 of the grids indicated a conclusion of not disabled.  The ALJ relied on the opinions of the State Agency examiner and Drs. Roe, Karamlou, and Thom for the finding of light work.  (Tr. at 521.)

The state agency doctor opined on November 17, 1998 that plaintiff could do medium work because she could lift fifty pounds occasionally and 25 pounds frequently.  She could stand and walk for six hours, and sit for six hours.  (Tr. at 140.)  The only other limitations were only occasional climbing, stooping and crawling.  (Id. at 141.)  Another agency examiner reviewed plaintiff's records on May 10, 1999, and concluded that she could do light work at this time, which included lifting twenty pounds occasionally and ten pounds frequently, standing and walking up to six hours, and sitting six hours.  (Id. at 161.)  The only other limitations were occasional stopping and crouching.  (Id. at 162.)

Dr. Roe, an orthopedist, conducted an exam on July 2, 1997.  He noted plaintiff's chronic low back pain, a discectomy in 1996 which had some benefit in helping her to walk, multiple epidural steroid injections, as well as epidural morphine shots.  (Tr. at 229.)  Medications were Vicodin four times per day.  (Id.)  Extension was limited in the lumbar spine.  Although range of motion and strength of the left elbow was normal, plaintiff showed tenderness on palpation.  Dr. Roe concluded that plaintiff could lift and carry twenty pounds occasionally

\\\\\

and ten pounds frequently, stand and walk up to six hours, and sit up to six hours. Pushing and pulling were unlimited. (Id. at 234.)

Dr. Tom, an orthopedic surgeon, examined plaintiff on April 15, 1999. There was marked decreased range of motion in the lumbar spine. (Tr. at 440, 443.) Range of motion of the elbows was normal. (Id. at 441.) X-rays at that time indicated mild disc space narrowing at L5-S1. (Id.) Dr. Tom limited plaintiff to lifting thirty pounds occasionally and fifteen pounds frequently. She could stand and walk for six hours, and sit for an unlimited time. (Id.)

The aforementioned physicians found that plaintiff could do light work and the ALJ relied on them. The ALJ also relied on Dr. Karamlou's opinion for the light work determination; however, this internist did not assess plaintiff's functional capacity.[2] He found range of motion of the cervical spine to be normal, but range of motion of the lumbar spine was abnormal. Pain from scoliosis was mild to moderate. There was also numbness in the left leg. Left elbow, knees and shoulders were tender but range of motion was normal in these areas. (Tr. at 333.) Gait was slow. (Id.) He diagnosed hypertension which was under treatment, atypical chest pain, headaches associated with insomnia, irritability, anxiety and depression treated by Prozac, osteoarthritis in the lumbar spine, shoulders and knees, and epichondritis of the left elbow. (Tr. at 334.)

These medical sources are substantial evidence for the ALJ's finding that plaintiff could do light work after plaintiff's alleged disability date. Other evidence supports the ALJ's determination that plaintiff could do light work prior to October, 2002. Dr. O'Hara on July 11, 1997, thought plaintiff could be retrained in work that did not involve heavy and repetitive

---

[2] Plaintiff correctly points out other failings by this physician in that he did not have access to plaintiff's medical records, and appears to have only listed plaintiff's diagnoses. Furthermore, he was an internist who completed a physical exam yet purported to conduct a mental status exam also. This last contention is approved *infra* in regard to plaintiff's allegation that her depression was a severe impairment. Nevertheless, this physician's *physical* diagnosis does carry the appropriate weight of a one time consultant. The Social Security Administration relies on its consulting examiners for their one-shot examinations, and the court is not free to ignore them under controlling principles of law.

activity in the left upper extremity. (Tr. at 252.) He deferred to Dr. Unatin's opinion regarding plaintiff's low back and potential disability in that regard. (Id.) On August 27, 1998, Dr. O'Hara thought plaintiff could not do her past work based on her elbow problems, but she could be retrained to do work that does not involve pushing, pulling, power grasp or lifting away from the body, based on less tenderness after elbow surgery and that strengthening exercises would help. (Tr. at 242-43.) Dr. Unatin on May 13, 1997 stated that although plaintiff had degenerative disc disease at L5-S1, she had good range of motion of her back, and that her neurovascular exam was normal. (Tr. at 227.)

Plaintiff points to medical evidence between 1997 and 2002 indicating disability since her alleged onset date. It is true that plaintiff was diagnosed with degenerative joint disease on May 1, 1997. (Tr. at 282.) An October 30, 1998, x-ray of the spine was normal other than a moderate discogenic disease of the L5-S1 disc space, anterior spurring, and scoliosis. (Tr. at 336.) An elbow x-ray indicated soft tissue swelling but no fractures. (Id.) On December 9, 1998, plaintiff's low back pain was thought to be caused by facet syndrome. (Tr. at 363.) Reference was made to an undated MRI which indicated facet hypertrophy at L4-5 and L5-S1. (Id.) Facet joint injections under fluoroscopy were administered. (Id.; tr. at 343.) On April 16, 1999, plaintiff was admitted for radiofrequency ablation of medial branch nerves at L3 - L5. Attempted location of S1 medial branch nerves was unsuccessful. (Tr. at 447.) Pre and Post-operative diagnosis was persistent low back pain secondary to lumbar facet arthropathy at L4-5 and L5-S1 bilaterally.[3] (Id.) On December 12, 2001, plaintiff was seen at Skypark Walk-In Medical Center where it was noted that although the back was tender, there was no spasming. Motor exam revealed no tremor or atrophy, and strength was symmetrical in all extremities. Straight leg raising was negative bilaterally. (Tr. at 659.) Plaintiff received ongoing treatment for low back pain up to and beyond October, 2002. (Tr. at 701, 690, 598, 605, 631.)

---

[3] This procedure was conducted the day after Dr. Tom found plaintiff could do light work. (Tr. at 443.)

7

Despite these records indicating significant and ongoing problems predating plaintiff's October 30, 2002 birthday, the records relied on by the ALJ constitute substantial evidence for his opinion that plaintiff could do light work prior to October, 2002. Since there was no significant deterioration in her back problems after this date, plaintiff probably could have continued in a light work category after this time. Thus, it appears that plaintiff may have received a windfall from the ALJ's decision that she could only do sedentary work after this date. If the ALJ had continued to find that plaintiff could do light work after her 50th birthday, Rule 202.14 would have mandated a finding of not disabled after October, 2002.

Furthermore, contrary to plaintiff's assertion, the ALJ did consider the factors set forth in Social Security Ruling 83-20.[4]

Plaintiff contends that the ALJ's finding that she cannot do her past work because she is unable to perform the required significant standing or walking, precludes jobs at the light level and interferes with her ability to do jobs at the sedentary level. The ALJ did make these

---

[4] Social Security Ruling 83-20 provides in relevant part:

In disabilities of nontraumatic origin, the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity. The weight to be given any of the relevant evidence depends on the individual case.

... Medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability. The medical evidence serves as the primary element in the onset determination.

... With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling ... In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.

... In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on the informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred.

1  findings, but explained that plaintiff could do sedentary work. (Tr. at 521.) "Sedentary work" is
2  defined by 20 C.F.R. § 404.1567(a)(2005) as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. SSR 96-9p., 61 Fed. Reg. 34,478 (1996); SSR 83-10 (1983); Ferraris v. Heckler, 728 F.2d 582, 587 (2nd Cir. 1984) (upholding SSR 83-10). "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." SSR 83-10.

The ALJ's conclusion of sedentary work is therefore consistent with his finding that plaintiff could not do the significant walking and standing that her previous job required.

Plaintiff also claims that due to pain in her left upper extremity since 1997, she cannot do sedentary work to the extent that the ALJ so found, which requires good use of both hands. The practitioners relied upon by the ALJ for a finding of light work did not find restrictions in the use of plaintiff's hands or fingers. Dr. Roe allowed unlimited pushing and pulling except for lifting and carrying restrictions. (Tr. at 234.) Dr. Tom did not restrict the use of plaintiff's upper extremities other than in lifting. (Id. at 443.) Dr. Karamlou opined that plaintiff's range of motion in the shoulders and left elbow were normal. (Id. at 333.)

\\\\\
\\\\\
\\\\\
\\\\\

Even the evidence cited by plaintiff does not implicate use of the hands and fingers, but focused only on pain and stiffness in the left elbow and right upper extremity.[5]

B. <u>Depression as a Severe Impairment</u>

Plaintiff contends that the ALJ erred in declining to find the plaintiff had a severe mental impairment.

An impairment is not severe only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. The purpose of step two is to identify claimants whose medical impairment is so slight that it is unlikely they would be disabled even if age, education, and experience were taken into account. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 107 S. Ct. 2287 (1987). "The step-two inquiry is a de minimis screening device to dispose of groundless claims." <u>Smolen v. Chater</u> 80 F.3d 1273, 1290 (9th Cir. 1996). At this step, the ALJ may decline to find a severe impairment only if the medical evidence clearly establishes that the plaintiff did not have a severe impairment. <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005). If the ALJ cannot clearly determine the effect of an impairment on an individual's ability to do basic work activities, he must find a severe impairment or supplement the record. <u>Id.</u>

In regard to plaintiff's mental impairment, the ALJ rejected the only psychiatrist of record because he had opined "that the claimant's ability to cope with ordinary work stresses is limited due to her physical illness," and because he was a psychiatrist, his statements regarding plaintiff's physical limitations could not be credited.[6]  (Tr. at 520.)  Based on the lack of regular

---

[5] Although plaintiff alleges carpal tunnel syndrome, and some progress notes list it as a diagnosis, there are no medical records which indicate a proper diagnosis. (Tr. at 657, 658.) <u>See</u> www.ninds.nih.gov. (website of the National Institute of Neurological Disorders and Stroke).

[6] As a medical doctor, Dr. Magpayo's opinion as to plaintiff's physician condition should not have been rejected. Nevertheless, his opinion does not change the outcome and therefore the ALJ's dismissal of it was harmless. <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1121 (9th Cir. 1990). His opinion of history of hypertension, status post discectomy at L4-L5, hypercholesterolemia and status post left elbow surgery was based on plaintiff's subjective history as related to him, as he

or significant treatment for mental problems in the record, the ALJ found that plaintiff did not have a severe mental impairment. (Id.)

This psychiatrist, Dr. Magpayo, evaluated plaintiff on October 23, 1998 at the request of the Department of Social Services. He diagnosed depressive disorder, NOS, and a GAF of 70.[7] (Tr. at 339.) He concluded:

> Her ability to focus attention is not limited and she is able to follow instructions, however, slow due to her complaints of pain in her lower back. Her ability to adapt to and cope with stressors common to the work environment is limited due to her physical illness. She needs some help with her activities of daily living due to her current complaints.

(Id. at 340.)

A GAF of 70 does not warrant a finding of severe. Although plaintiff claims to have a long history of depression, the only other references to it in the record are a few progress notes which list depression or anxiety but were presumably written by Dr. Raikhel, plaintiff's treating physician who was not a psychiatrist. Although she prescribed Prozac, Serzone, and Zoloft, she did not refer plaintiff for psychiatric care or counseling, and there are only two visits which mention treatment for depression, despite plaintiff's listing Prozac as medication she has been taking since 1998. (Tr. at 271, 279, 127.) A mental residual functional capacity assessment completed on November 17, 1998, by a non-examining physician found that plaintiff was moderately limited in ability to understand, remember and carry out detailed instructions, but she had no objective symptoms of depression and her mental status examination was normal. (Tr. at 156, 158.)

---

did not have records to review and conducted no physical exam. (Id. at 337-40.)

[7] GAF is a scale reflecting the "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed.1994) ("DSM IV"). A GAF of 61-70 indicates "some mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM IV.

Dr. Karamlou was a one time consultant who was an internist only and his diagnoses of depression and anxiety should be given little weight for this reason, and because the mental status aspect of the examination did not involve any testing. Dr. Karamlou's remarks were limited to the following:

> The patient is alert and oriented in all spheres, but she is apprehensive during this examination. She is also very quiet. Speech is coherent and audible. Patient denies any paranoid delusions, hallucinations, suicidal or homicidal ideation. Affect is appropriate. Memory and concentration are intact. Insight and judgment are good.

(Tr. at 334.)

In light of the 764 page record in this case, there is a dearth of evidence of alleged mental problems. Although Webb requires supplementation of the record where it is incomplete, Webb also acknowledges that plaintiff has the ultimate burden of proof to produce the evidence that demonstrates she is disabled. 20 CFR § 404.1512(a); Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. Here, plaintiff has the burden to come forward with evidence of a disability and the record as a whole does not support depression as expressed by plaintiff. The ALJ did not err in finding plaintiff had no severe mental impairment.

C. Whether the ALJ Erred in Failing to Obtain Testimony From a Medical Expert Where Plaintiff's Onset Date Was Inferred

Plaintiff contends that the ALJ should have called a medical advisor where, as here, it is necessary to infer an onset date, and the medical documentation is inadequate. SSR 83-20 states in this regard: "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred."

In this case, the onset date determined by the ALJ was based on plaintiff's birthday because, as the Commissioner points out, by operation of law, plaintiff could no longer work after her 50th birthday, according to the grids. Here, the circumstances surrounding the

\\\\\

onset date are not unclear by virtue of the lack of medical evidence, which consists of more than five hundred pages of medical records alone.

D. Whether the ALJ Failed to Reconcile the Inconsistent Findings That Plaintiff's Allegations of Depression and Pain Were Substantiated With the Finding of a Later Onset Date

Finally, plaintiff contends that the ALJ was inconsistent in crediting plaintiff's allegations of depression and pain, but nevertheless finding a later onset date. In this regard, the ALJ stated,

> In reaching this conclusion, the undersigned has considered the claimant's own subjective allegations of depression and pain in her back, hands, and feet. These allegations are substantiated by the significant medical findings of record, the substantial restriction in the claimant's daily activities, and the multiple potent medications that the claimant has taken.

(Tr. at 521.)[8]

What plaintiff fails to mention is that the ALJ previously discussed the medical records which she finds warrant a sedentary level of work. The ALJ later stated that based on this level of work, once plaintiff reaches her 50th birthday, she must be found disabled because at that age plaintiff comes under Rule 201.14 of the grids which mandates a finding of disabled. Prior to her 50th birthday, plaintiff comes under Rule 201.21 (or Rule 202.21 for light work) and the grids mandate a finding of not disabled. Therefore, the ALJ's crediting of plaintiff's subjective complaints of pain is not inconsistent with her finding that she can do sedentary work.

\\\\\

\\\\\

---

[8] In light of the discussion in Section B *supra*, it appears that the ALJ's statement that plaintiff's allegation of depression is substantiated by "the significant medical findings of record" is a mistake. Otherwise, it could not be reconciled with her earlier finding that plaintiff did not have a severe mental impairment. In reviewing the record in regard to that issue, the court can draw no other inference from this apparent inconsistency, and the ALJ does not cite any "significant" findings to support this statement. The record itself is clear in supporting the finding of no severe mental impairment.

CONCLUSION

Accordingly, plaintiff's Motion for Summary Judgment or Remand is denied, the Commissioner's Cross Motion for Summary Judgment is granted, and the Clerk is directed to enter judgment for the Commissioner.

DATED: 3/27/06

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
U.S. MAGISTRATE JUDGE

GGH/076
Hauser0170.ss.wpd